JOHN HOSKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10241. Promulgated June 14, 1927.

1. MARCH 1, 1913, VALUE OF REAL PROPERTY involved in this proceeding, determined.

2. DEDUCTIONS.—Three notes executed by this petitioner in December, 1921, payable five years from date and delivered to petitioner's children as compensation for services during 1921, held not deductible from gross income as a business expense paid during 1921, the petitioner having kept his books and made his income-tax return on the cash basis.

*W. F. Frame, Esq.,* and *P. L. Billings, C. P. A.,* for the petitioner.

*John W. Fisher, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in the amount of $3,316.53 in income tax for the calendar year 1921, as asserted by the Commissioner in his letter dated October 27, 1925.

The petitioner alleges that the respondent erred as follows:

(1) That he placed a March 1, 1913, farm-land value of $150 per acre instead of a farm-and-coal-land value of $300 per acre on certain land alleged to have been known on said date to be underlain with coal, and that he used the former value in determining the gain realized on the sale of the land in 1921 for coal operations.

(2) That he disallowed the deduction of compensation for services paid during 1921 by petitioner, to three of his children, as an ordinary and necessary business expense.

(3) That in computing the deficiency he failed to allow a credit in the amount of $33.03 paid by petitioner upon the filing of his original return and that he allowed a credit of only the amount of $137.16 paid by petitioner upon the filing on August 5, 1923, of his amended return.

### FINDINGS OF FACT.

The petitioner is an individual residing at Earlham, Iowa, and was during the year 1921 and for many years prior thereto, engaged in the business of farming.

In 1901 the petitioner purchased a farm consisting of 120 acres near Waukee, Iowa, lived thereon and farmed it from that time until it was sold in 1921. The purchase price plus cost of improvements made prior to March 1, 1913, was less than $150 per acre. Prior to 1901, the petitioner's grantor, in drilling for water encountered a vein of coal, which fact was known to petitioner, but he did not know the exact thickness of the vein nor its depth from the surface. Along the creek which traversed petitioner's farm there appeared an outcropping of coal.

Prior to 1913 two test holes were drilled just across the road from petitioner's farm on the adjoining farm owned at that time by one Chambers. In each hole there was encountered, at a depth of 200 feet, black coal-bearing slate and then a 3-foot vein of good coal. The holes were drilled a few feet further through a thin layer of fire clay below which black slate was again encountered. At that point the drilling operations ceased because of lack of funds. The second layer of black coal-bearing slate indicated that there existed a second vein of coal. The Chamber's farm was located west of petitioner's farm and the first test hole was drilled near the road between the two farms and the second test hole was drilled about 500 feet west of the first one, showing that the vein ran east and west at a uniform depth and thickness and strongly indicating that the same vein continued east under petitioner's land. Prior to 1913 a test hole was drilled on the Aldrich farm, which is a short distance east of the petitioner's farm but not adjoining, and coal was encountered at a depth of about 250 or 300 feet. Prior to March 1, 1913, petitioner had knowledge of the above related facts. It was generally known throughout that vicinity that coal deposits existed and the farmers considered their land worth from $75 to $100 per acre over and above the farm land value because of such coal deposits.

In March, 1912, a farm of 200 acres, located about one mile from the petitioner's farm, was sold for $215 per acre, the vendee assuming an outstanding mortgage of $12,000 and paying the balance in cash. The vendor of this farm was at the time desirous of disposing of it for the reason that he owned two other farms, and he did not take into consideration in fixing his selling price any element of value other than ordinary farm value. The land and buildings on this farm were comparable to the petitioner's farm in every respect except that the petitioner's dwelling was larger and of better construction.

The March 1, 1913, value of petitioner's farm was $275 per acre. In 1921, the petitioner sold his 120-acre farm near Waukee for $400 per acre, to two men for coal-mining operations. The improvements placed on the said farm subsequent to March 1, 1913, in the amount of $1,060 and the depreciation sustained in the amount of $711 are

not in dispute. The profit realized from the said sale amounted to $14,651.

During the year 1921 the petitioner lived on and operated a 160-acre farm near Earlham, Iowa, which is approximately 25 miles from Waukee. The petitioner was 63 years of age in 1921 and not able to do much work except chores, and he employed his eldest son George, who was of age, to manage the farm. George lived on the farm, managed it subject to advice of his father and did a great deal of the work. Extra hands were hired during harvest season and were paid by petitioner. The produce was sold in petitioner's name and he received the proceeds. As compensation for George's services rendered during 1921, the petitioner executed on December 23, 1921, a note for $1,800 payable five years from date, and delivered the said note to George on or about the same date. The petitioner's daughter Carol, who was of age, lived on the same farm with petitioner, helped with the household work, milked cows every morning and evening, helped him in the field during haying season and also helped shuck corn during the fall of the year. As compensation for Carol's services the petitioner executed on December 23, 1921, a note for $1,200 payable five years from date and delivered the said note to Carol on or about the same date. In this proceeding the petitioner is claiming $400 as compensation paid Carol for her services outside of the household duties. The petitioner's two minor sons also worked on the farm, but they received no compensation for their services.

In July, 1921, the petitioner purchased a 240-acre farm near Earlham and employed his son Delbert, who was of age and who at that time was employed in Des Moines City, to manage that farm from August 1 to the end of the year 1921. Delbert lived on the 240-acre farm, operated and managed it and performed most of the work. He had hired help part of the time who were paid by the petitioner. The produce was sold in the petitioner's name and he received all the proceeds. As compensation for Delbert's services during the five months of 1921, the petitioner executed on December 23, 1921, a note for $1,200 payable five years from date and within four or five days from said date Delbert called at the bank of Earlham and received the said note.

The petitioner was solvent, but inasmuch as the farms had operated at a loss during 1921, he did not have the cash to pay the above mentioned salaries and for that reason gave the said notes, which the said children have held in their own possession ever since. The year 1921 was the only year in which petitioner made such an arrangement with his children.

The petitioner operated on a cash basis and reported his income on the same basis.

On or about March 15, 1922, petitioner filed his income-tax return for the year 1921, showing a tax liability of $33.03, which amount was paid by draft accompanying the return. Subsequently, in April, 1923, the petitioner filed an amended return for the year 1921 showing a total tax liability of $170.19 and paid the additional amount of $137.16. The collector of internal revenue for the district of Iowa made a return showing petitioner's tax liability for the year 1921 to be $3,453.69. The respondent accepted this latter return and computed the deficiency in tax to be $3,453.69 less $137.16, amounting to $3,316.53, the amount in dispute in this proceeding. No credit was given for the $33.03 paid upon the filing of the original return.

The respondent in accepting the return prepared by the collector of internal revenue determined the March 1, 1913, value of the land in question to be $150 per acre on the basis that it was not known at that time that there existed coal deposits on petitioner's land and also he disallowed the deduction of the amounts of the three notes which petitioner gave to his three children for their services.

### OPINION.

Trussell: The record of this case establishes the fact that the petitioner's farm is located in territory where coal deposits were generally found and that the drilling for coal had shown seams of merchantable coal on both the east and west sides of petitioner's farm, and that there was an outcropping of coal on the petitioner's farm. Witnesses thoroughly familiar with the territory and with land values there testified that where coal was believed to exist land values were in 1913 approximately $75 or $100 per acre higher than land values where coal was not supposed to exist. A sale of comparable farm property, without reference to the element of coal-deposit values, established a value of $215 per acre in 1912, and from all the facts contained in this record, we are of the opinion, and have so found, that petitioner's farm then had a value made up of both the farm-land-value element and the coal-deposit-value element and that the March 1, 1913, value of petitioner's farm was $275 per acre.

The next question for consideration is whether petitioner should be allowed for the year 1921 a deduction as an ordinary and necessary business expense of the total amount of the three notes given by petitioner to his children as payment for their services on the farms. We have not been informed as to the grounds upon which the respondent disallowed the said deductions. From the facts in this record we must come to the conclusion that there is serious doubt as to the reasonableness of the salaries in question. However, it is not necessary for us to decide the question of reasonableness, for the petitioner was on the cash basis and made his income-tax

return upon the same basis, and while he incurred a liability to pay those three notes in December, 1926, he did not actually pay the salaries in 1921. Furthermore, we have no evidence that the three children George, Delbert, and Carol accepted the notes as payment of the compensation due them for their services. The notes constituted evidences of promises to pay certain amounts in December, 1926. The giving of the said notes did not constitute disbursements during the year 1921, and upon the cash basis of accounting and making of the income-tax return the amounts of the notes are not deductible as an expense paid during 1921. Cf. *Warner L. Colvert* v. *Commissioner*, 6 B. T. A. 623.

In the recomputation of this petitioner's tax liability and the amount of the deficiency for the year 1921, in accordance with the above findings of fact and this opinion, there should be allowed a credit in the amount of $170.19 which has been paid by petitioner for income tax for 1921.

> *Order of redetermination will be made upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*